UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

USHC, LLC                                           CASE NO.: 11-30583(1)(11)

　　　　　　　Debtors

### MEMORANDUM-OPINION

This matter is before the Court on the Motion Pursuant to Sections 327 and 1107 of the Bankruptcy Code for Order Authorizing Debtor-in-Possession to Retain and Employ Attorneys *Nunc Pro Tunc* ("the Application") filed by Debtor USHC, LLC ("Debtor") seeking an Order approving the employment of Seiller Waterman LLC ("Seiller Waterman") as attorneys for Debtor.  The Court considered the Debtor's Application, the United States Trustee's Limited Objection to Debtor's Application, the Memoranda of Law filed in Support of the Debtor's Application and the U.S. Trustee's Objection , and the comments of counsel and testimony of the witnesses at the hearing held on the matter.  For the following reasons, the Court grants in part, and denies in part, the  Debtor's Application to Employ Seiller Waterman as attorneys for the Debtor.

### PROCEDURAL BACKGROUND FACTS

On February 9, 2011, David Cantor, a partner of Seiller Waterman, filed a Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code on behalf

of the Debtor. Debtor has operated as a Debtor-in-Possession under 11 U.S.C. §§1107(a) and 1108 since that time.

On February 11, 2011, Debtor filed its Application to employ Seiller Waterman as its attorneys pursuant to 11 U.S.C. §§327 and 1107 of the United States Bankruptcy Code. The Application indicated that Debtor had paid Seiller Waterman a $30,000 retainer for its services to be rendered as counsel on behalf of the Debtor in this case. The Application also states, "[i]n anticipation that the aforementioned retainer will not be sufficient to pay for all services and expenses incurred, the following provisions for additional payment(s) have been agreed to by client and counsel: escrowing with counsel an additional $2,000 per month. Any fees would be paid upon approval by the United States Bankruptcy Court."

The United States Trustee filed its Objection on March 7, 2011 on the basis that the $2,000 to be escrowed monthly represents a post-petition security retainer to secure Seiller Waterman's fees in contravention of the Bankruptcy Code.

The Court held an evidentiary hearing on the Application on July 12, 2011. Ken Chandler, a senior bankruptcy analyst with the U.S. Trustee's office, testified that the Debtor's most recent monthly operating reports indicate that in 2010 Debtor had gross revenues of $6 million. While in bankruptcy, from January through May of 2011, Debtor had approximately $1 million in sales with annual sales projected to be approximately $2 million. Debtor had $263,000 in cash on hand at the time the Petition was filed with $63,000 remaining. Since the filing of the Petition, the Debtor's post-petition liabilities are

$314,000.  Debtor was past due $17,000 on its taxes at 90 days and past due $16,000 after 60 days.  The Debtor was also behind on its worker's compensation insurance payments at the time of the hearing.  While accounts receivables are increasing, the Debtor's cash position is steadily eroding.

Attorney David Cantor of Seiller Waterman testified on behalf of the firm and in support of the Debtor's Application.  Seiller Waterman represents just less than half of the debtors who have pending Chapter 11 cases in this District.  The firm generally charges between $7,500 to $75,000 as a retainer.  The retainers are used for pre-petition services, and filing fees with the remainder placed in escrow.  In Cantor's experience, 0% of the retainers collected have paid for the full cost of a case and in 98% of the cases in which his law firm represents Chapter 11 debtors, attorney fees are owed when the case is confirmed.  Cantor testified that while the United States Trustee gets paid in full, and the creditors get paid under the debtor's plan, debtor's counsel sometimes must wait a year or more to be paid.

## **LEGAL ANALYSIS**

Debtor seeks approval of this Court to employ Seiller Waterman as its attorney pursuant to 11 U.S.C. §§327 and 1107 of the United States Bankruptcy Code.  Sections 327 through 331 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules govern employment of professionals by an estate.  There are no objections to the disinterestedness of Seiller Waterman's employment. Trustee objects, however, to the term in the Application

requiring the Debtor to escrow $2,000 per month post-petition so that funds will be available to pay Debtor's counsel on a regular basis.

In general, professionals, including attorneys, who are retained with the approval of the Bankruptcy Court may obtain payment of compensation in accordance with 11 U.S.C. §§330 and 331. The attorney is allowed to apply for reimbursement of expenses and payment of fees not more than every 120 days after an order of relief or more often if the Court allows. Under 11 U.S.C. §328(a), the Debtor, with the Court's approval, may obtain the employment of a professional "on any reasonable terms and conditions of employment, including on a retainer . . .". The Court is not convinced that this particular case warrants approval of the post-petition retainer and a departure from its typical practice regarding the payment of professional fees and expenses for debtor's attorneys in Chapter 11 proceedings.

There are basically two general categories of retainers: a classic retainer and a special retainer. Under the classic retainer, a client agrees to pay a fixed sum in exchange for the attorney's promise to perform legal services that may arise during a specific period of time. *In re Renfrew Center of Florida, Inc.*, 195 B.R. 335, 338 (Bankr. E.D. Pa. 1996). It is earned by the attorney upon payment. *Id.* The special retainer is divided into two further categories, a security retainer and an advanced fee retainer. The security retainer allows the attorney to hold the retainer to secure payment of fees for future services. The funds remain the property of the debtor until applied by the attorney for services rendered. The

advanced fee retainer is similar to the security retainer except that the ownership in the funds passes at the time of the payment of the funds to the attorney. *Id.: See also*, *In re Insilco Technologies, Inc.*, 291 B.R. 628, 632 (Bankr. D. Del. 2003).

The retainer proposed in the Application is similar to the security retainer and an "evergreen retainer," which is used to secure payment of fees for future services. Under an "evergreen retainer", interim fees and expenses are paid out of operating cash. *Insilco,* 291 B.R. at 632. While the *Insilco* case lists a set of factors to be considered by the court in determining reasonableness of a proposed fee arrangement, the factors set forth in *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. B.A.P. 1988), are more helpful to this Court as it considered whether "rare"circumstances exist justifying a departure from typical fee arrangements in Chapter 11 cases.

In *Knudsen,* the court determined that §328 justified a fee arrangement procedure whereby professionals employed by the debtor would be paid each month without prior court approval. The Bankruptcy Appellate Panel believed sufficient safeguards existed in the arrangement to justify a departure from normal procedures. The court listed 4 factors that a court should consider in approving what it called "the rare case" fee retainer procedure. These are: 1) the case is an unusually large one in which an exceptionally large amount of fees accrue monthly; 2) the court is convinced that waiting an extended period for payment would place an undue hardship on counsel; 3) the court is satisfied that counsel can respond to any reassessment of the fee; and 4) the fee retainer procedure itself

is the subject of a noticed hearing prior to any payment thereunder. *Id. at 672.  See also, In re W & W Protection Agency, Inc.,* 200 B.R. 615 (Bankr. S.D. Ohio 1996).

In this case, consideration of the factors set forth in *Knudsen* lead the Court to conclude that the "rare" circumstances required by most courts to approve the requested retainer do not exist.  This case is not an unusually large one, counsel has not demonstrated an undue hardship by having to wait an extended period for payment, there is no showing that Seiller Waterman could not respond to any reassessment on the fees and while the retainer procedure requested in the Application would be subject to the notice and hearing requirements prior to approval, the extraordinary retainer procedure requested is not warranted, nor would it be feasible for the Estate.

Unlike the situation presented in *Knudsen*, this case is not a liquidating Chapter 11.  While the primary secured creditor herein did not object to the proposed retainer, it is not the party advancing the fee as in *Knudsen*.  The case at bar does not meet the *Knudsen* criteria as a "rare" case justifying a post-petition retainer.

In *In re Shelley*, 91 B.R. 803 (Bankr. S.D. Ohio 1986), Judge Rhodes used the analysis employed in *Knudsen* in rejecting a proposed fee arrangement under which debtor's counsel obtained a retainer for services to be rendered and assumed the retainer would be insufficient to cover anticipated fees.  Therefore, the firm requested that it be authorized to receive 75% of its post-petition monthly billings directly from the debtor each month after the retainer was consumed.  As here, debtor proposed that fees and expenses would

be subject to subsequent court review and approval.  Debtor's counsel listed many of the same reasons as Counsel does in this case justifying the procedure.  The court rejected this reasoning and emphasized that Congress had provided for the possibility of more frequent applications than set forth in §331.  The Court also stated that there is no indication in Sections 328(a), 331, or the Code's legislative history that a compensation arrangement such as the one proposed should be approved simply because the law firm was small or the debtor might be required to pay a higher retainer.

This Court is aware of the financial constraints placed upon Chapter 11 debtors' counsel with respect to the payment of fees.  The Code, however, provides for risk minimizing devices, such as the payment procedure for interim compensation and reimbursement of expenses.  Additionally, all administrative expenses are afforded priority under the Code and there are also provisions available for a "carve out" for professional fees.  *Insilco, 291 B.R. at 633; In re High Voltage Engineering Corp.,* 311 B.R. 320, 333 (Bankr. D. Mass. 2004).  Debtor's counsel must always consider the Code's requirements regarding the employment of professionals and the financial risks associated with undertaking any employment at the outset of a case.

Once a debtor seeks relief under Chapter 11, the attorney for the debtor-in-possession also becomes a fiduciary to the estate.  The unique circumstances which surround insolvency and the filing of a Chapter 11 case place the attorney for the debtor-in-possession in the position of being more than a mouthpiece for the debtor. *In re Doors*

*and More, Inc.*, 126 B.R. 43 (Bankr. E.D. Mich. 1991).   The attorney must discern what measures are necessary to achieve a successful reorganization, but also to assure that, in so doing, compliance with the Code is met.  The attorney's duty as a fiduciary to the estate requires an active concern for the interest of the estate and its beneficiaries.  *In re Consupak, Inc.,* 87 B.R. 529 (Bankr. N. D. Ill. 1988).

Pre-petition retainers such as the one used by Seiller Waterman herein secure the assurance of future payment for services rendered during the course of a case.  Those funds serve as collateral for payment of the attorney's allowed fees.  It transforms the attorney into a secured creditor with a possessory perfected security interest in the funds to the extent the retainer covers fees approved by the Court. *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222 (Bankr. E.D. Tenn. 2006), citing *In re Pannebaker Custom Cabinet Corp., 198 B.R. 453, 460 (Bankr. M.D. Pa. 1996).*  By approving the post-petition escrow requested in the Application, the Court would be sanctioning Debtor's use of the cash collateral of another creditor, (although the secured lender herein raised no such objection), as well as placing the Debtor's attorney in a priority position above other administrative claimants.  It also would not be in the best interest of the estate.  The facts presented by this case do not justify a departure from the normal compensation procedures followed in this District as provided for under the Bankruptcy Code.

Other than the monthly post-petition retainer requested in the Application, the Debtor's Application to employ Seiller Waterman is appropriate and will be approved by

the Court. However, the United States Trustee's Limited Objection regarding the request of post-petition retainer is sustained.

## **CONCLUSION**

For all of the above reasons, the Court will enter an Order approving in part and denying in part the Debtor's Motion to Authorize Debtor-in-Possession to Retain and Employ Attorneys *Nunc Pro Tunc*.

*Joan A. Lloyd*
Joan A. Lloyd
United States Bankruptcy Judge
Dated: September 23, 2011

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

USHC, LLC

CASE NO.: 11-30583(1)(11)

Debtors

### ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference, the Motion Pursuant to Sections 327 and 1107 of the Bankruptcy Code for Order Authorizing Debtor-in-Possession to Retain and Employ Attorneys *Nunc Pro Tunc* filed by Debtor USHC, LLC is **GRANTED IN PART AND DENIED IN PART**.  The Debtor is authorized to employ Seiller Waterman LLC in accordance with the terms of its Application, except for the provision requiring the Debtor to escrow $2,000 per month post-petition as a retainer.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  September 23, 2011